10 So.2d 776

**MORGAN v. ECHOLS.**
No. 36483.

Nov. 4, 1942.

Spaht & Holcombe, of Baton Roug?, for appellant.

Breazeale, Sachse & Wilson, of Baton Rouge, for appellee.

McCALEB, Justice.

This is a suit for damages arising out of the alleged violation by the lessee of the provisions of an oil, gas and mineral lease.

The plaintiff, George F. Morgan, is the owner of a 4-acre suburban tract of land located on Highland Road south of the city of Baton Rouge. The property has a frontage of 493 feet 9 inches on Highland Road and extends in depth 345 feet between parallel lines. Situated in the rear, and approximately in the middle of the property, is a one-story frame dwelling which has not been used by Morgan as his regular residence for a considerable length of time. Morgan's home is located in Colfax, Louisiana. However, he occupies the house in Baton Rouge intermittently on occasions when he visits that city for the purpose of disposing of produce from his farm.

On August 4, 1934, Morgan, together with several other landowners in the vicinity of his property, entered into a community oil, gas and mineral lease with one Karl E. Young which provided that the lessee would have the right to select any one of the properties covered by the contract for the purpose of exploring for oil. This lease was subsequently assigned by Young, the lessee, to George H. Echols, the defendant in this case. Shortly before the month of May, 1939, Echols decided to drill for oil and selected Morgan's property as the site for the drilling operations. Accordingly, during May, 1939, after obtaining Morgan's consent as to the location of the proposed operations, Echols moved upon the property and began to drill a well which is now known as the "George F. Morgan et al. Well No. 1." The explorations were successful and a producing oil well resulted.

On July 7, 1939, shortly after the completion of the oil well, Morgan wrote a letter to Echols in which he requested reimbursement for the value of certain shrubbery, trees, etc., which had been destroyed by Echols during the execution of the drilling operations. The amount claimed totalled the sum of $1,434 and Echols refused to accede to the demand.

Subsequently, on March 5, 1940, the plaintiff filed the present suit against Echols in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, in which he claimed the sum of $3,334, representing the alleged damage he sustained by reason of the drilling operations conducted upon his property. This total sum was divided by plaintiff into three separate items; one item of $1,434 for the destruction of trees, plants, shrubbery, etc.; another for the sum of $1,500, representing the value of his house which plaintiff contended had been rendered unfit for use or habitation by defendant's act in placing the well and other equipment 75 feet from the premises without plaintiff's consent and in violation

of the lease; and the sum of $400, representing rental claimed against the defendant because of the location of two large oil storage tanks and an oil separator, which were erected on the north side of the driveway leading from Highland Road to plaintiff's house, allegedly in violation of defendant's promise to him that all operations would be conducted on the south side of said driveway.

To this petition, the defendant interposed certain exceptions which were sustained by the trial judge. On the judge's order, plaintiff's claim for $400 rental due by the defendant was rejected and the plaintiff has acquiesced in this ruling as to that item of damage. The judge also required the plaintiff to amend and supplement the allegations of his petition. After supplemental pleadings had been filed in compliance with the court's order, the defendant joined issue by answer, in which he denied any and all liability to plaintiff in the premises and prayed for the dismissal of the suit.

Thereafter the case proceeded to trial on the issues thus joined and the District Judge, after hearing the evidence, rendered judgment in the sum of $1,009 in plaintiff's favor for the damage to the trees, shrubbery, etc., which had been destroyed as a result of the drilling operations, and rejected plaintiff's demand for the value of his house, which plaintiff claimed had been rendered uninhabitable and worthless by reason of the close proximity of the oil well to it.

From this judgment the plaintiff prosecuted an appeal to the Court of Appeal, First Circuit. The defendant answered the appeal, seeking a reversal of the judgment of the trial court in so far as the allowance to plaintiff of $1,009 for the destruction of his trees, shrubbery, etc., was concerned, and prayed that it be affirmed in all other respects. The Court of Appeal subsequently dismissed the appeal on the ground that the amount in controversy exceeded its appellate jurisdiction and, acting under the authority of Act No. 19 of 1912, it ordered the case transferred to this court. The matter has now been submitted to us for decision.

The plaintiff bases his cause of action in this case on two provisions of the community oil lease contract which he claims have been violated by the defendant. His demand for recovery of the value of his house, which he asserts has been rendered unsuitable for habitation by reason of the close proximity of the oil well and equipment to it, is founded upon an alleged violation of the following provision of the lease: " * * * no well shall be drilled within two hundred feet of any residence or barn now on said land without lessor's consent."

The evidence in the case shows that the oil well is located approximately 75 feet from plaintiff's house. However, defendant did not breach the above-quoted stipulation because he had previously obtained plaintiff's consent to conduct the operations at that point. This fact is not seriously disputed by the plaintiff—for he alleges in his petition that, prior to the time drilling operations were commenced, he agreed to permit the defendant to drill the well at a distance less than 200 feet from

the house. Moreover, the uncontradicted evidence shows that, before any operations were begun, Mr. S. P. Gilley, a representative of the defendant, Echols, called upon the plaintiff and his wife and informed them that it had been decided to drill a well on plaintiff's property and that the location of this well would be less than 200 feet from the house situated on plaintiff's land. Plaintiff not only admits that he agreed to this, but he signed, together with the other lessors, a letter addressed to the Department of Conservation stating that the proposed well was to be located at a point on his property, 175 feet south of Highland Road. This point is approximately 75 feet from plaintiff's house.

Plaintiff concedes these facts in argument and in his brief before this court, but he maintains that he is, nevertheless, entitled to recover the value of the house (claimed to be rendered worthless as a result of the drilling operations) because his consent was obtained in consideration of a promise made by Mr. Gilley. He says that, at the time Mr. Gilley requested his consent, he agreed to give it on condition that Mr. Gilley promise him that all drilling operations, location of equipment, etc., would be confined to the south side of the driveway leading from Highland Road into his property; that Mr. Gilley agreed to this condition and that, notwithstanding this, the defendant, after the well was brought in, located the oil separator, two large tanks and other equipment on the north side of the driveway in violation of the promise. The judge of the District Court, after hearing evidence on this question, was of the opinion that:

"* * * while there was some conversation between plaintiff and defendant's agent Gilley, pertaining to confining the operations as near as possible to that part of the land which lies southeast of the aforesaid driveway and relative to a bridge being built at the extreme southeast corner, defendant's agent assumed no such obligation."

"I have reached this conclusion for the reason that, according to the testimony of Mr. Gilley, owing to the place the well was located, it would have been impractical to so locate other necessary objects in the prosecution of the work, which Mr. Gilley must have known when he was talking to Morgan, and for the additional reason that Morgan made no timely objection to their location."

Counsel for the plaintiff take issue with the conclusions of the District Judge on the foregoing question of fact, stating that he erred in his ruling because an examination of the testimony and of the map of plaintiff's property, which was offered in evidence, shows that there was sufficient room in the rear of the land on the south side of the driveway to have erected the separator, storage tanks, etc. They point out that, while Mr. Gilley testified that the reason why these objects could not be located on the southeast side to the rear of plaintiff's property was because there was a high embankment located there, the ground upon which he bases his conclusion is erroneous for the reason that the evidence shows that the land on the south side of the driveway is practically level. They further assert that the testimony of

Mr. Pickett, the production man for the defendant who stated that there was not enough room in the southeast rear of the premises to locate the separator, storage tanks, etc., should not be believed because the map in evidence demonstrates that there was at least 170 feet of land to the rear of the oil well which could have been utilized for that purpose.

A careful examination of the record has satisfied us that the trial judge's appreciation of the testimony is correct. In the first place, we are not persuaded that the evidence authorizes the conclusion that the plaintiff's consent to the location of the well and drilling operations was conditioned upon a definite promise of Mr. Gilley that all operations would be confined to the south side of the driveway leading to plaintiff's house. While Mr. Gilley frankly stated that he told plaintiff that he would, if possible, see to it that all operations would be conducted on the south side of the roadway, there is nothing about his representation to indicate that he intended to bind the defendant absolutely to confine all operations to the south side of the driveway and that, if the well operators felt that it was impractical to locate the separator and storage tanks there, defendant would refrain from using the north side. In other words, the promise itself was conditional and was made dependent on future operations and we cannot seriously believe that the plaintiff considered it to be binding and enforcible. Aside from this, we are impressed by the testimony of Mr. Pickett that, due to the presence of slush pits which connected with the oil well on the south side of the driveway, there was not sufficient room to erect the separator and the oil storage tanks at the place which plaintiff contends should have been utilized for that purpose.

Furthermore, it seems unlikely to us that, had plaintiff been of the opinion that there was a binding promise made to him by Mr. Gilley, he would have failed to register some sort of protest against the erection of the equipment on the north side of his driveway at the time the operations took place. Apparently no complaint was ever made until this suit was filed. Plaintiff's letter to Echols, dated July 7, 1939, which was after the well had been completed, discloses that he limited his claim to the damages resulting from the destruction of his trees, shrubbery, etc.

Disposal of the foregoing issue leaves only for consideration the award of the trial judge for damages in the sum of $1,009, for the destruction of pecan, fruit-bearing trees, flowers, shrubbery, etc., sustained by the plaintiff as a result of the drilling operations. The plaintiff states that the allowance of the judge, which is based upon the testimony of an expert horticulturist, is substantially correct. Defendant, however, maintains that these damages are not recoverable in law and, in the alternative, that the amount awarded is excessive.

In support of the first proposition, i. e., that the actual physical damage suffered by the plaintiff is not recoverable, defendant's counsel have directed our attention to a number of authorities which hold, in substance, that damages suffered by a lessor as a consequence of oil drilling operations

on his property are not recoverable unless it is shown that the lessee has performed the operations in a negligent and unworkmanlike manner. It suffices to say that the jurisprudence relied upon is not controlling in the instant case for the reason that the community oil lease, under consideration, specifically provides that: "Should lessee destroy or physically damage any property in carrying out any of the purposes for which this lease is granted, such lessee shall reimburse that particular lessor whose property is so damaged or destroyed to the extent of the damages so caused."

■ We are also unable to find any substance in defendant's contention that the award of the trial judge of the sum of $1,009, representing the value of the trees, shrubbery, etc., destroyed by defendant in the drilling operations, is excessive. Plaintiff testified in detail as to the number and value of the fruit and pecan trees and other shrubbery on his land and that they were destroyed by the defendant in the operations conducted on the property. The judge accepted, for the most part, the estimate of the value of these trees, etc., made by Mr. Pollizzotto, an expert horticulturist, who testified for the plaintiff. There was no substantial evidence submitted by the defendant's witnesses contradicting plaintiff's testimony on this point and nothing whatever to discredit the values given by plaintiff's expert.

For the reasons assigned the judgment appealed from is affirmed. The costs of this appeal are to be paid by the plaintiff, other costs to be borne by the defendant.

ROGERS, J., absent.